UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CASCADES STREAMING TECHNOLOGIES, LLC,  )
                                        )
                      Plaintiff,        )    13 C 1455
                                        )
            vs.                         )    Judge Gary Feinerman
                                        )
BIG TEN NETWORK, LLC,                   )
                                        )
                      Defendant.        )

**MEMORANDUM OPINION AND ORDER**

On May 4, 2016, this court issued an opinion construing contested terms in fifteen claims

of U.S. Patent No. 8,156,236 ("the '236 patent"). Doc. 155 (reported at 2016 WL 2344578

(N.D. Ill. May 4, 2016)). Cascades Streaming Technologies has moved the court to reconsider

one of its constructions. Doc. 159. The motion is granted in part and denied in part.

The '236 patent involves technology for streaming audiovisual content over a computer

network while allowing a user to seamlessly switch the content being streamed. Doc. 55 at 4-23;

2016 WL 2344578, at *4. Several claims asserted by Cascades against Big Ten Network require

the invention to switch from streaming one video file to streaming "a second video file which is

different from the first video file" or a "second video file being different from the first video

file." Doc. 55 at 21, col. 26, ll. 25-26 (claim 17); *id.* at 21, col. 26, ll. 45-46 (claim 18); *id.* at 22,

col. 27, ll. 7-8 (claim 22). The Network proposed a very narrow construction of these terms:

> The second of two video files having a different point of view from that in the
> first video file.

Doc. 52 at 11. Cascades proposed a much broader construction:

> The second file has different content, for example, a different camera angle or
> additional image detail, from another video file.

Doc. 61 at 11. The court noted that Cascades's proposal hews more closely to the ordinary meaning of "different," but it observed that "claim construction does not always require courts to give terms their ordinary meanings." 2016 WL 2344578, at *11. In particular, if a patent applicant makes statements to the United States Patent and Trademark Office ("PTO") during the patent's prosecution that "clearly and unmistakably" disclaim that the patent applies to certain technology, then the court must construe the patent not to apply to that technology, even if the ordinary meaning of the patent's claims would encompass it. *Ibid.* (citing *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008)); *see also Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1327 (Fed. Cir. 2003) (holding that the patent applicant, in communications with the PTO, had disclaimed coverage of certain embodiments that fell within the ordinary meaning of the patent's claims).

The PTO initially rejected all but three of the proposed claims in the '236 patent as non-novel in light of an earlier patent issued to Anoop Gupta and Nosakhare Omoigui. Doc. 55 at 147-50; *see* 35 U.S.C. § 102(a). Gupta's invention was a method for streaming audiovisual content over a network in a way that allowed the user to switch between versions of the content that differed by playback speed. So, if a user was streaming a lecture and wanted to proceed quickly through a section covering material that she already knew fairly well, she could switch to a version of the video that played at twice the normal speed; then, when the section ended, she could switch back to a natural-speed version. Doc. 160-1 at 12. The switches in Gupta's invention were not seamless; instead, with each switch, the invention would repeat a short portion of the video. *Id.* at 17, ¶ 75.

The Inventors responded to the rejection by sending the PTO a memo arguing that their invention differed from Gupta's, and that they therefore deserved a patent notwithstanding the

prior existence of Gupta's technology. Doc. 55 at 130-37. The memo went on for several pages, but the most important part consisted of two sentences:

> As can be seen Gupta is directed to a system that stores multiple "speed" versions of the audio and video content for play back at different speeds. This is completely different than Applicant's invention where the video is switched from one stream to a completely different stream without any alterations to the video or audio.

*Id*. at 134. After reviewing the memo, the PTO reversed its initial decision, concluded that dozens of proposed claims were novel despite Gupta's invention, and granted the '236 patent.

*Id*. at 4.

This court held that the above-quoted passage from the Inventors' memo to the PTO had disavowed that the '236 patent used the word "different" in its ordinary sense; the court reasoned:

> If video files were "different" whenever they "ha[d] different content," then the Gupta system's differently accelerated video files would qualify. But the Inventors made clear that the Gupta system's differently accelerated video files are not "different" for the purposes of the '236 patent. A change to a video file's playback speed is a mere "alteration[]"; the patented invention's video files must instead be "completely different" from each other.

2016 WL 2344578, at *15. Still, the court held that the disclaimer was narrower than the Network said it was:

> [The Network] equates "completely different" with "representing different points of view," but it is not clear why that should be. The specification shows that one way for video files to be "completely different" is if they represent different points of view. Still, there could be other ways for video files to be completely different; for instance, files produced from the same point of view but representing different innings of the same baseball game might qualify.

*Ibid*. Accordingly, the court adopted a middle-ground construction:

> The second video file must be completely different from the first video file, and may not be a mere alteration of the first video file. For example, the second video file is completely different from the first video file if it

> represents a different point of view of an event. Two video files that differ
> only by the level of image detail they convey are mere alterations.

*Id*. at \*16. Because the Inventors' statements to the PTO applied to every one of their proposed

claims, the court held that a method or device could not infringe *any* of the '236 patent's claims

unless it involved switching between video files that were "completely different" rather than

"mere alterations." *Ibid*.

Cascades now asks the court to reconsider that construction. Doc. 160. Federal Rule of

Civil Procedure 54(b) provides that "any order or other decision, however designated, that

adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties …

may be revised at any time before the entry of a judgment …." Fed. R. Civ. P. 54(b). "Unlike

the case in which a *judgment* is sought to be vacated … a motion to reconsider a *ruling* is

constrained only by the doctrine of the law of the case." *Pickett v. Prince*, 207 F.3d 402, 407

(7th Cir. 2000); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012); *Santamarina v.*

*Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006). The law of the case doctrine

manifests as a presumption that a district court should not "reopen[] a decided issue," but it is

"no more than a presumption," and "one whose strength varies with the circumstances." *Galvan*,

678 F.3d at 587 (quoting *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995)).

The presumption is weak when it comes to motions to reconsider claim constructions; indeed,

the Federal Circuit has observed that "[d]istrict courts may engage in a rolling claim

construction, in which the court revisits and alters its interpretation of the claim terms as its

understanding of the technology evolves." *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302

F.3d 1352, 1361 (Fed. Cir. 2002).

Cascades first argues that the Inventors' memo to the PTO never "clear[ly] and

unmistakab[ly]" disavowed claim scope. Doc. 160 at 6. Cascades asserts that the court's initial

opinion quoted only two sentences of the memo, and that "the rest of the sentences which give those sentences their complete context … were missing." Doc. 160 at 4. That is incorrect. The court quoted the entire paragraph, albeit in the "Background" section rather than in the "Discussion" section. 2016 WL 2344578, at *4.

Cascades next argues that the rest of the paragraph makes clear that the Inventors were distinguishing their own invention from Gupta's *only* on the ground that their invention featured "smooth switching" while Gupta's did not. According to Cascades, the Inventors were not distinguishing the two inventions on the ground that Gupta's involved switching between altered versions of the same video content while theirs involved switching between video files that were "completely different." *Id*. at 8-9.

That argument is unconvincing. The full paragraph from the memo reads as follows, with the two sentences that the court understood as effecting a disclaimer highlighted:

> *As can be seen Gupta is directed to a system that stores multiple "speed" versions of the audio and video content for play back at different speeds. This is completely different than Applicant's invention where the video is switched from one stream to a completely different stream without any alterations to the video or audio.* Further, Gupta requires that "the multimedia player repeats a portion of the multimedia content and begins playing at the new speed." This inherently means that the invention in Gupta interrupts the video and audio stream to repeat previously view [sic] material again. Also, unlike Applicant's invention the audio in Gupta will be altered in duration and compensated for the pitch to remain unmodified when the user selects to play the stream at "timelines modified by factors of 0.5, 1.0, and 2.0." Moreover Gupta does not teach a switching streaming technology not in [0082] nor in [0096], the concept of smooth switching is completely absent in Gupta, the term "switch" or a synonym is not present in the cited reference. Applicant's invention does not contain these limitations and in fact overcomes the limitations of Gupta and other prior art streaming methods by allowing the user to smoothly switch views of a streaming broadcast without interruption or repetition. Therefore, Gupta does not teach or suggest each and every limitation of Applicant's invention and withdrawal of the rejection is requested.

Doc. 55 at 134.  Cascades is right that the sentences immediately following the highlighted text distinguish Gupta's invention on the ground that it does not switch smoothly.  By using the word "Further" to start that particular passage, however, the Inventors signaled that they were describing an additional, independent distinction between their invention and Gupta's rather than expounding on the distinction that they described in the first two sentences of the paragraph.  *See United States v. Yah*, 500 F.3d 698, 704 (8th Cir. 2007) ("The use of the words 'further' in the second sentence and 'also' in the third demonstrates the independence of the three separate promises."); *Succession of Neff*, 716 So.2d 410, 412 (La. App. 1998) ("The testator clearly intended to leave the disposable portion to Sanches and '*further* bequeath' the entire balance of the estate to both heirs.  The word 'further' clearly expresses the intent that the remainder of the estate was an additional bequest after the legacy of the disposable portion.").  In fact, the whole paragraph reads as a list:

1. As can be seen Gupta is directed to a system that stores multiple "speed" versions of the audio and video content for play back at different speeds.  This is completely different than Applicant's invention where the video is switched from one stream to a completely different stream without any alterations to the video or audio.

2. *Further*, Gupta requires that "the multimedia player repeats a portion of the multimedia content and begins playing at the new speed."  This inherently means that the invention in Gupta interrupts the video and audio stream to repeat previously view material again.

3. *Also*, unlike Applicant's invention the audio in Gupta will be altered in duration and compensated for the pitch to remain unmodified when the user selects to play the stream at "timelines modified by factors of 0.5, 1.0, and 2.0."

4. *Moreover* Gupta does not teach a switching streaming technology not in [0082] nor in [0096], the concept of smooth switching is completely absent in Gupta, the term "switch" or a synonym is not present in the cited reference.

Doc. 55 at 134 (emphases added). So, because patent applicants who make multiple disclaimers are bound by all of them, the additional disclaimers in the rest of the paragraph do nothing to show that the Inventors did not make the disclaimer in the first two sentences. *See Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) (where the applicant distinguished a piece of prior art on several grounds, holding that each distinction disavowed claim scope even though the PTO may have relied on only one of them); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007) ("[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well.").

That is a problem for Cascades, because it gives no plausible account of how the paragraph's first two sentences on their own deal with smooth switching. Cascades argues that "without any alterations to the video or audio" is synonymous with "without repeating any portion of the video or audio." Doc. 160 at 9-10. Here, though, Cascades is the one ignoring context. The first sentence of the paragraph states that "Gupta is directed to a system that stores multiple 'speed' versions of the audio and video content for play back at different speeds," which, as the second sentence states, makes Gupta's invention "completely different than" the Inventors'. Doc. 55 at 134. But the fact that Gupta's invention repeats content at switches in no way contradicts that "Gupta is directed to a system that stores multiple 'speed' versions of the audio and video content." So, if Cascades's reading of the second sentence were correct, the first sentence would be a *non sequitur*. That is strong evidence that Cascades's reading of the second sentence is incorrect. *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning

and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.") (quoting *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987)).

Cascades also cites a portion of the Inventors' memo that quotes Gupta's patent at length and emphasizes portions of the patent that distinguish Gupta's invention from their own. Doc. 160 at 5. One of the emphasized passages reads, "***In response, the multimedia player <u>repeats a portion of the multimedia content</u> and begins playing at the new speed.***" *Ibid.* (quoting Doc. 55 at 133). What Cascades misses, though, is that the quoted passage is one of ten that the memo emphasizes, with others reading, "***each pair forming a composite media stream having a timeline that has been modified by a factor of 0.5, 1.0, or 1.5***," "***The various individual data streams have timelines that are modified by different degrees***," "***multiple playback speeds from which a user can select***," and "***five playback speeds are listed: x0.5, x0.75, x1.0, x1.25, and x1.5***." Doc. 55 at 133. All that the first quoted passage shows, then, is that the Inventors distinguished their invention from Gupta's *in part* on the ground that Gupta's invention did not switch smoothly; it does not show that the Inventors distinguished their invention from Gupta's *only* on that basis, and in fact it supports the court's conclusion that they *also* intended to distinguish Gupta's invention on the ground that it switched between video files that differed only by playback speed.

Cascades's second principal argument is that the court erred by embedding in its construction a ruling on whether the '236 patent applies to the Network's accused technology. That technology, called "adaptive bitrate streaming," switches between video streams that differ only by their level of image detail. Doc. 35-2 at 4-6, 9-10, 12; Doc. 61 at 7. The court's initial opinion reasoned that video files that differ only by image detail are not "completely different,"

8

and that the Inventors therefore disclaimed coverage of technology that switches between such files.  The final sentence of the court's construction thus reads, "Two video files that differ only by the level of image detail they convey are mere alterations."  2016 WL 2344578, at *15-16.

"[C]laims may not be construed with reference to the accused device," which is to say that "a court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language" nor "tailor[] a claim construction to fit the dimensions of the accused product or process and to reach a preconceived judgment of infringement or noninfringement."  *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006).  This anti-tailoring rule "does not forbid awareness of the accused product or process to supply the parameters and scope of the infringement analysis, including its claim construction component," but it does forbid "biasing the claim construction process to exclude or include specific features of the accused product or process."  *Ibid*.  Because the last sentence of the court's construction explicitly references and excludes a feature of the accused process, Cascades asserts that it violates the anti-tailoring rule.  Doc. 160 at 10-11.

This argument lies poorly in Cascades's mouth, for if the court's construction violates the anti-tailoring rule, then Cascades's own proposed construction does, too.  As noted, Cascades's proposal reads: "The second file has different content, for example, a different camera angle *or additional image detail*, from another video file."  Doc. 61 at 11 (emphasis added).  The emphasized phrase expresses a position on whether differences in image detail alone can make two video files "different" for the purposes of the claims being construed—that is, on whether adaptive bitrate streaming infringes the '236 patent.  Cascades requested a ruling on whether claims 17, 18, and 22 applied to the accused technology; why should it be able to complain that it received a ruling on that question, albeit not the one it wanted?

Still, the Network does not argue that Cascades waived its ability to rely on the anti-tailoring rule when it asked for a tailored construction, and the Network thus forfeits any contention of waiver. Doc. 170; *see United States v. Jones*, 152 F.3d 680, 684 n.2 (7th Cir. 1998) ("Because the Government has forfeited its forfeiture argument, we shall review Jones's claims according to the standards of review that would have applied if Jones had raised these arguments in the district court."). And the error is easy to fix; Cascades admits that striking the last sentence of the existing construction will satisfy its objection. Doc. 172 at 2. Accordingly, the court grants Cascades's request. The last sentence of the court's second claim construction— "Two video files that differ only by the level of image detail they convey are mere alterations"— is stricken. This modification does not unfairly prejudice the Network, as any dispute over whether adaptive bitrate streaming satisfies the "completely different" requirement can be resolved on summary judgment or at trial.

Cascades gestures at two other objections to the court's initial claim construction ruling, but they are both meritless. First, Cascades argues that it was inappropriate to hold that the Inventors' disclaimer applied to every asserted claim, rather than only to claims 17, 18, and 22, which employed the construed term. Doc. 160 at 1 n.1. It was not inappropriate. The PTO initially rejected all but three of the Inventors' proposed claims as anticipated by Gupta's invention, including *all* of the claims that Cascades asserts in this suit. In response, without singling out particular rejected claims, the Inventors asserted that "Applicant's invention" was different from Gupta's because it involved switching "from one stream to a completely different stream without any alterations to the video or audio." Doc. 55 at 134. The only reasonable contextual reading of that statement is that *every one* of the rejected claims required switching between completely different video files; accordingly, the disclaimer applies to every one of the

rejected claims.  *See Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1348 (Fed. Cir. 2004).

Second, Cascades complains at length about the court's settling on its own construction rather than adopting a construction proposed by the litigants.  Doc. 160 at 1-2, 6, 9.  But that is entirely appropriate.  The court "has an independent obligation to determine the meaning of the claims, notwithstanding the views asserted by the adversary parties," *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995), and as such, "a district court may construe the claims in a way that neither party advocates," *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012).  In fact, *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003), on which Cascades extensively relies, does just what Cascades faults the court for doing—it holds that a patent applicant had effected a disclaimer, but that the disclaimer was narrower than contended by the party asserting it.  *Id.* at 1326-27.

For these reasons, Cascades's motion for reconsideration is granted in part and denied in part.  The court's second claim construction is modified to read:

> The second video file must be completely different from the first video file, and may not be a mere alteration of the first video file.  For example, the second video file is completely different from the first video file if it represents a different point of view of an event.

The court will not amend its ruling that every claim asserted in Cascades's suit requires switching between video files or streams that are completely different rather than mere alterations.

July 6, 2016

_____
United States District Judge